D. H. BRINKMAN, Appellee, v. C. C. McKELLIP, Appellant.

VENDOR AND PURCHASER: Merchantable Title—Rescission. Record
reviewed, and held to show that a defect in the title had been so
adjusted by agreement, and that the vendee had been so protected
by the decree of the court, as to furnish no basis for a rescission of
the contract.

Headnote 1:  39 Cyc. pp. 1524, 1525.

*Appeal from O'Brien District Court.*—WILLIAM HUTCHINSON,
Judge.

FEBRUARY 17, 1925.

REHEARING DENIED MAY 15, 1925.

ACTION to enforce performance of a contract for sale of
real estate. Defense is based on right of rescission because of
claimed failure to comply with the contract. By counterclaim,
defendant sought to recover purchase money paid on the con-
tract. From decree in favor of plaintiff, defendant appeals.—
*Affirmed.*

*T. E. Diamond,* for appellant.

*Klay & Klay* and *Van Oosterhout & Kolyn,* for appellee.

ARTHUR, J.—I.  Plaintiff was the owner of a quarter sec-
tion of land in O'Brien County, Iowa. On the 15th of April,
1919, plaintiff and defendant entered into a written contract,
whereby defendant purchased said land. The consideration was
$52,000. The contract provided for a down payment of $1,500,
which was made. The contract further provided for the pay-
ment of $10,500 on the 1st day of March, 1920, and said pay-
ment was made. Resting on said land was a first mortgage for
$6,000, executed by plaintiff's immediate grantor, Phares
Schoch, to the Northwestern Mutual Life Insurance Company,
dated February 8, 1917, bearing 5 per cent interest, due in 5

years. Also upon said land was a second mortgage for purchase price, executed by D. H. Brinkman to Phares Schoch, for $20,200, given February 28, 1918, due March 1, 1928, bearing 5 per cent. In said mortgage it is provided that the grantee has the privilege of paying first mortgage, and to have a new mortgage for the amount of the first and second mortgages. The contract provided:

"Second party [McKellip] to assume mortgage or mortgages in the sum of $26,200, together with interest thereon at the rate of five per cent from and after March 1, 1920, which said mortgage or mortgages shall not become due prior to March 1, 1928, and with optional payment privilege on interest pay dates. Six thousand dollars to run for a period of two years from and after March 1, 1920, with interest at the rate of five per cent per annum, payable annually, from March 1, 1920, and on March 1, 1922, when same became due, second parties are to give back to first party a mortgage on the south half of said southeast quarter of Section 4—97—42, in the sum of $6,000 in payment thereof, same to become due on March 1, 1930, and draw interest at the rate of five per cent from and after March 1, 1922."

The contract further provided for the execution of mortgages by McKellip to secure other payments on the north half of said quarter, and for renewal of prior mortgages, etc. The contract further provided that grantor was to deliver warranty deed and abstract showing good and marketable title to the south half of said quarter on March 1, 1922, and to the north half of said quarter on March 1, 1923.

About ten days or two weeks prior to March 1, 1920, when, by the terms of the contract, the payment of $10,500 was to be made, McKellip asked to see the abstract of the land, which Brinkman produced; and McKellip, accompanied by Brinkman, took the abstract to John McCandless, an attorney of Sheldon, Iowa, for examination. McCandless examined the abstract, and, in the presence of both parties, told McKellip that the abstract did not disclose the due date of the $6,000 mortgage to the Northwestern Mutual Insurance Company, and approved the abstract as showing good and merchantable title, with this exception. Thereupon, Brinkman and McKellip had a conversation with

reference to this defect, in which conversation Brinkman told McKellip, in substance, that he would see to it that the $6,000 mortgage was renewed so as to become due in 1928, and would pay all expenses incident thereto. After examination of the abstract by McCandless, and after the conversation above related, McKellip made the payment of $10,500, and thereafter, on March 1, 1920, went into possession of the land. Sometime later, McKellip sold the land. The person to whom McKellip sold the land failed to carry out the contract, and forfeited a $2,500 payment, and the contract was canceled, McKellip retaining possession of the land. Later, McKellip leased the land for a period expiring March 1, 1923.

On March 1, 1922, Brinkman tendered a deed to the south half of the quarter, as provided by the contract, and an abstract. McKellip refused to accept the deed, assigning as his reason that the abstract did not comply with the contract, in that it did not show good and merchantable title. The only defect complained of was the failure of the abstract to show when the insurance company mortgage would be due. On March 3, 1922, McKellip served notice of rescission and demand for return of the payments made under the contract, less the reasonable rental value of the premises from the time he went into possession up to March 1, 1922. The notice also recited that McKellip surrendered possession of the premises. Thereupon, this suit was instituted, to enforce specific performance of the contract.

II.  The only objection urged to the abstract, when it was examined by McCandless shortly before March 1, 1920, was that it did not disclose when the $6,000 mortgage held by the insurance company would be due. The abstract, when delivered with the deed to the south half of said quarter section, on March 1, 1922, was the same in this respect as it was in 1920, and constituted the principal reason for rejecting same. On this defect in the abstract, and some minor objections, defendant predicates his right to terminate and rescind his contract of purchase, and recover payments made.

The evidence is voluminous, and it would not be useful or practicable to set it forth in detail. We have carefully examined the entire record. There is some conflict in the testimony as to whether an agreement was reached between the parties

when McCandless examined the abstract, in February, 1920, in regard to what would be done about extension of the $6,000 mortgage. In this connection it is pertinent to consider a conversation between the parties which the record shows took place at the time the contract was drawn. The contract did not, in terms, describe the $6,000 first mortgage to the insurance company and the $20,200 second and purchase-money mortgage. The recital in the contract with reference to these mortgages was:

"Second party to assume mortgage or mortgages in the sum of $26,200, together with interest thereon at the rate of five per cent from and after March 1, 1920, which said mortgage or mortgages shall not become due prior to March 1, 1928."

The reason for not more definite wording of the above quoted assumption in the contract appears in the record. Brinkman testified that he stated to McKellip, at the time the contract was drawn, that he had bought the land under a contract in regard to the $6,000 insurance company mortgage that became due in 1922; that Schoch, from whom he bought the land, had the privilege of paying the $6,000 mortgage and receiving a mortgage for $26,200, to cover the amount of the $6,000 mortgage and the $20,200 mortgage, or he could enlarge the insurance company mortgage and reduce his mortgage, or he could extend or renew the insurance company mortgage. This same matter is taken care of in the contract in suit, without stating the particular reasons therefor. Brinkman says that, at the time the contract was drawn, he showed McKellip his contract with Schoch, containing the matters which he told McKellip. McKellip denied seeing the Schoch contract. There is some conflict in the testimony as to what occurred, and whether or not an agreement was reached between Brinkman and McKellip in regard to the $6,000 mortgage at the time McCandless examined the abstract, shortly before March 1, 1920. The abstract showed date of the mortgage to be February 8, 1917, but did not show when it would become due. Under the contract, "the mortgage or mortgages" therein mentioned were not to become due, for McKellip's assumption of them, until March 1, 1928. The $6,000 mortgage, as it then appeared, without renewal and extension, became due in 1922. Abstract and deeds were not to

be delivered until 1922 and 1923. Evidently McKellip wanted to know whether he was getting a good title to the land before making payment of $10,500, due March 1, 1920; and this was his purpose in wanting the abstract examined. Brinkman knew, and told McKellip, that the mortgage would be due in 1922. McCandless told McKellip, in substance, that it could be certainly ascertained when the mortgage would become due, and that it would be extended so as to meet the terms of the contract, and that he "thought there should not be anything in the way." Brinkman testified that he told McKellip that he would see to it that the mortgage was renewed and extended so as to become due in 1928, as provided in the contract, and would pay all expenses incident thereto, without any expense to McKellip. McKellip denies that he agreed to the proposition made by Brinkman with reference to procuring renewal and extension of the mortgage. Brinkman's testimony is substantially corroborated by McCandless, and also by the conduct of McKellip himself. We think it fairly established that McKellip agreed to the arrangement for extension of the mortgage so that it would become due in 1928. Obviously, McKellip was satisfied, and agreed to the proposal of Brinkman; for he then made his payment of $10,500. McKellip paid the interest on the $6,000 mortgage up to March 1, 1922; and also on the Schoch mortgage; also taxes and other demands under the contract.

The insurance company, holder of the $6,000 mortgage, on learning that McKellip had bought the land on contract in December, 1921, wrote to McKellip, calling his attention to the fact that the loan would become due and payable on February 8, 1922, and asked whether the loan would be paid at maturity, or whether he would desire to have it extended for a further term of years. The company also wrote to their agent at Sheldon, Ashton State Bank, to the same effect, and the Ashton State Bank called the attention of McKellip to the matter. When the contract of purchase was drawn, and Brinkman and McKellip had a conversation with reference to the $6,000 mortgage, it was not known, and would not be known until later, whether the $6,000 mortgage would be in existence when it came time to deliver deeds; because the Schoch contract, which Brinkman exhibited to McKellip, provided that a new mortgage might

be given for $26,200,—that is, for the amount of the two mort-
gages,—or other adjustments made. Sometime before the mort-
gage became due, Brinkman made application for renewal. The
insurance company was all the time ready and willing to renew
the mortgage and to extend time to become due, to March 1,
1928, but required that application therefor be signed by
McKellip, as well as by Brinkman and Schoch. Schoch signed
the application, but McKellip refused to sign it. Brinkman de-
posited a certified check to take care of the difference between
6 per cent interest, which the indebtedness bore, and 5 per cent,
which was to be paid by McKellip under the contract. It is
established by the evidence that the mortgage was not renewed
by March 1, 1922, because McKellip refused to execute the ex-
tension contract. Brinkman pleaded, and it is established by
the evidence, that, if McKellip had informed him in ample time
before the mortgage bonds became due, that he would not join
in an application for extension of the mortgage, he, Brinkman,
was able to and would procure assignment of said mortgage, and
personally would have extended the same.

We think it is established by the evidence, as contended by
Brinkman, that the parties had an agreement that the mortgage
should be extended so as to run to March 1, 1928, and that re-
newal of the mortgage would be made without expense to
McKellip, and that the difference in interest would be paid by
Brinkman, and that McKellip, on account of such agreement,
and by his conduct, was not entitled to claim defect in the title
to said land because said mortgage was not extended on March
1, 1922, to run until March 1, 1928. McKellip went into posses-
sion of the land March 1, 1920, and was in possession at the time
of the trial. He had leased it for a period to expire March 1,
1923, and was not in position to, and did not, deliver possession
of the land.

The court below was justified in holding that McKellip was
not entitled to be released from his contract, and in awarding
specific performance thereof. In the decree, the court made the
following order: "That if, within 60 days from the date of the
filing of this decree, plaintiff procures a renewal of the $6,000
mortgage, or places upon said land a first mortgage drawing in-
terest at the rate of 5 per cent from March 1, 1920, to March 1,

1928, in compliance with the terms of his contract," he should have judgment and decree for specific performance of his contract. The terms of the contract and decree were fully complied with, and supplemental decree entered accordingly.

We find no reason to disturb the decrees and judgment, and they are affirmed.—*Affirmed.*

FAVILLE, C. J., and EVANS and ALBERT, JJ., concur.